CASE 61—PETITION ORDINARY—APRIL 1.

## Wills v. Wills, &c.

## Ramsey, &c., v. Wills, &c.

APPEALS FROM CLARK CIRCUIT COURT.

1. CONSTRUCTION OF DEVISE.—In the case of an immediate devise, a devise over in the event of the death of the first devisee refers to that event occurring in the life-time of the testator where there is no other period to which the words can be referred.
2. CASE ADJUDGED.—A testator, after directing that his estate be equally divided between his four living children (excluding the child of a deceased daughter) "under the restrictions and exceptions hereinafter

made," proceeded to place certain restrictions upon the portions of his two married daughters, and appointed his two sons as his executors, and, finally, by the last clause of his will provided: "In case of the death of either of my children I will that their said interest shall go to their children, in case they have any; if not, it is to go equally to my four living children, or the heirs of their body, or such as may be living."    *Held*—That the children of the testator took an absolute estate, and not merely a life estate or a defeasible fee, the testator intending by the last clause to provide how the estate should pass under the will in the event of the death of either of his children during his life-time.

WM. LINDSAY FOR APPELLANTS.

The testator intended that the devise over provided for by the seventh clause of his will should take effect only in the event of the death of any one of his children in his life-time, and that after distribution each child should have an absolute estate in his share and not merely an estate for life or a defeasible fee.

Where the bequest is direct and immediate, *the dying without issue or children*, nothing else appearing, means the death of the legatee in the *testator's life-time*. When the gift is not immediate, the words "dying without issue" will be construed as meaning the death of the legatee after that of the testator, and before the time for distribution, or when the legacy may be reduced to possession. (Berney v. Richardson, 5 Dana, 432; Hughes v. Hughes, 12 B. M., 116; Wren v. Hynes' Adm'r, 2 Met., 129; Wills v. Franklin, MS. Op., Oct. 24, 1874; O'Mahoney v. Burdett, 7 Eng. and Irish Appeals, Law Reports, 403; Jarman on Wills (Bigelow), 5th Am. ed., vol 2, pp. 752-754.)

Cases commented on: Bowers v. Bowers, L. R., 5 Chy. App., 246; Edwards v. Edwards, 15 Beav.

W. M. BECKNER ON SAME SIDE.

Where a bequest is simply to A., and in case of his death, or if he die, to B., if A. survives the testator, he takes absolutely. (Jarman on Wills, 2 volume, 659; Bindon v. Suffolk, 4 Bro. P. C., 574; Wilson v. Bagley, 3 Bro. P. C., 195; Roebuck v. Dean, 2 Vesey, Jr., 265; Perry v. Woods, 3 Vesey, Jr., 204; Maberly v. Strode, 3 Vesey, Jr., 450; Brown v. Biggs, 7 Vesey, Jr., 280; Edwards v. Symonds, 6 Tarenton, 213; Long v. Prigg, 8 B. & C., 231; Hinckley v. Simmons, 4 Vesey, 160; Leopold v. Stoneham, 2 Strange, 1261; King v. Taylor, 5 Vesey, 806; Omminey v. Beavan, 18 Vesey, 291; Slade v. Milner, 4 Madd. Ch., 144; Clarke v. Lubbock, 1 Y. & C., 492; Drayton v. Drayton's Ex'r, 1 Des., 328; Whitney v. Whitney, 45 N. H., 311; 1 Cush., 118; Hansford v. Elliott, 9 Leigh, 88; Moore v. Lyons, 25 Wend., 139; Johnson v. Morton, 10 Pa. St., 245; Ross v. Drake, 37

Pa. St., 373; Laurence's Lessee v. McArter, 10 Ohio, 38; Shattuck v. Stedman, &c., 2 Pick., 470; Fulton v. Fulton, 2 Grant's Cases (Pa.), 28; Hempstead v. Dickson, 20 Ill., 193; Birney v. Richardson, 5 Dana, 432; Hughes v. Hughes, 12 B. M., 116; Wren v. Hynes' Adm'r, 2 Met., 129; O'Mahoney v. Burdett, 7 English and Irish Appeals, 395; Wills v. Franklin, MS. Op., Oct., 1874.)

Cases commented on: Edwards v. Edwards, 15 Beav., 357; Bowers v. Bowers, 5 Ch'y App., 248; Ware v. Watson, 7 D. M. & G., 248.

B. F. BUCKNER FOR APPELLEES.

The words "if he die," or "in case he shall die," annexed to a devise, and wholly unconnected with any contingency of time or fact, are construed as applying to the case of death in the life-time of the testator. But this construction never prevails if there is any *contingency of time or uncertainty of event* connected with the devise. (Jarman on Wills, volume 2, page 752, fifth ed., by Bigelow; *Ibid.*, pages 757, 761 and 783; Cooper v. Cooper, 1 K. and J., 658; Hughes v. Hughes, 12 B. M., 115; Bowers v. Bowers, L. R., 5 Ch'y App., 246; Edwards v. Edwards, 15 Beav., 361; O'Mahoney v. Burdett, L. R., 7 Eng. and Ir. Appeals, 392; Ingram v. South, *Ibid.*, 421.)

Therefore, a devise, as in this case, to A, and if he die with issue, remainder to that issue, and if he die without issue, to his brothers and sisters, is not to be restricted to a dying in the life-time of the testator. (De Boe v. Lower, 8 B. M., 616; Allen v. Farthing, 2 Maddox, 311; Gen. Stats., chap. 50, art. 2, sec. 1.)

The cases of Moore v. Lyons, 25 Wend., and Wren v. Hynes, 2 Met., commented on.

T. S. TURNER FOR APPELLEES.

A devise to A., and, "in case of his death," to B., nothing else appearing, will be regarded as referring to the death of A. in the life-time of the testator; but this construction will not be adopted if there is any other period to which the words can be referred. Therefore, where, as in this case, the testator has connected the event of death with a collateral event, as "dying without issue," the words will be treated as referring to death *at any time*, and not confined to death occurring in the life-time of the testator. (Jarman on Wills, 5th Am. ed., vol. 2, pp. 752, 754, 757, 783, 784, 785, 787; Nowlan v. Nelligan, 1 Bail Court Cases, Lowndes & Maxwell, 489; Allen v. Farthing, 2 Maddox, 311; Child v. Giblett, 3 My. & K., 71; Cooper v. Cooper, 1 Kay & Johnson, 658; Bowers v. Bowers, 5 Ch. App., 244; Home v. Pillans, 2 My. & K., 15; O'Mahoney v. Burdett, L. R., 7 House of Lords, 388; Ingram v. Southern, *Ibid.*, 408; Redfield on Wills, vol. 2, p. 242, note 98 (3d ed.); *Ibid.*, p. 260; Hughes v. Hughes, 12 B. M., 115; Gen. Stats., chap. 50, art. 2, sec. 1.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

These two actions, in the nature of ejectments, were instituted in the court below for the recovery of the land in controversy by the children and devisees of John P. Wills, who are the appellees, against the devisees of John G. Wills, the present appellants.

The right of recovery depends on the construction given the last will of John P. Wills, deceased.

The testator had four children living at the time of his death and a grandchild. He disinherited his grandchild, giving his entire estate to his four children. Their names were Martha Flynn (wife of Dudley Flynn), John G. Wills, Benjamin Wills and Mary E. Wills.

The son, John G. Wills, took possession of his part of the realty in the year 1870, and died long after the testator, his father, without children, leaving a last will and testament, by which he devised his part of the realty to the present appellants.

It is maintained by the appellees that the son, John G. Wills, had no power to dispose of this realty by will or otherwise, and that, having died without children, his part of the estate passed under his father's will to his surviving brothers and sisters or their descendants, who are the appellees; while the appellants insist that, at the death of John P. Wills (the father), his son, John G. Wills, surviving him, took an absolute estate in the land, and, therefore, the title passed from him under his last will to them.

After the death of the first testator his son, John G. Wills, claiming to be the owner in fee of that part of the estate devised to him, sold a small strip or par-

·cel of his land to one William S. Franklin, and the latter refusing to pay the purchase-money and questioning the title, an action was instituted for a specific performance, that upon the hearing was dismissed ·by the court below, and on an appeal to this court the judgment below was reversed, and an opinion delivered determining that John G. Wills, under the will of his father, was invested with the fee-simple title. That opinion was delivered in the year 1873; but as that action was between John G. Wills and Franklin only, the present appellees not being parties to the record, they should not be held to that judgment if the construction given the will of John P. Wills was erroneous. The chancellor below only considering that opinion as an argument on the one side, .and, perhaps, not entitled to that consideration that would have been given it if the question presented had been more elaborately discussed, held that John ·G. Wills, having died without children, had only a life estate or a defeasible fee. in the land devised to him, and rendered a judgment for the appellees. As no argument by brief or otherwise was presented to this court in the case of Wills v. Franklin, favoring the construction given the will by the court below in the present case, we will treat the question involved as if it had arisen *de novo*, and with the careful and .able presentation of the views of counsel on each side, will have but little difficulty in placing a proper construction on the provisions of this will that must determine the right of property between these parties.

The language of the will is as follows: "Clause 2. I will to my beloved wife Nancy what she is enti-

tled to by law, and, in addition to that, whatever she may elect to take in the way of stock and servants, leaving it to her to take whatever she may want in kind, quality and quantity, she having already some money that I have now given her, which is not to be taken into consideration."

"3. It is my will that, after the special devise above, that all my property be equally divided among my four living children, Martha Ann Flynn, John G. Wills, Benj. E. Wills and Mary Elizabeth Wills, under the restrictions and exceptions hereinafter made."

"4. I give to my grand-daughter, Martha Lockman, formerly Martha Flynn, one dollar."

"5. It is my will that whatever portion of my estate should go to my daughter Mary Elizabeth, shall go to her exclusive benefit and control, to the total exclusion of her husband, both as to principal and profits and proceeds; and this provision is also to apply to my daughter Martha Ann Flynn, I herein making the same provisions with regard to her interest; not, however, through any lack of confidence in her present husband."

"6. I will my sons, John G. and Benj. E. Wills, my executors herein, and request them to carry out faithfully the provisions of this will."

"7. In case of the death of either of my children, I will that their said interest shall go to their children, in case they have any; if not, it is to go equally to my four living children, or the heirs of their body, or such as may be living."

The will of the common ancestor, John P. Wills,

was probated in the year 1869, and his estate divided between his four children, the devisees, in the year 1870, and the nature, extent and character of the interest devised to each must be determined under the recognized rules of construction by which courts are assisted in arriving at the intention of the testator.

Did the testator in this case intend to give to his four children the fee, subject to be divested at their death without leaving children, or, in other words, did the language used create a defeasible fee? If not, did the testator intend to give to each of his children only an estate for life in the estate devised, or was it his intention to give to them the absolute fee, in the event they were living, to take the estate at his, the testator's, death?

When this case was heretofore in this court, the case of Hughes v. Hughes, 12 B. Monroe, 115, was referred to as recognizing the following rule of construction that should be applied to the language of the present will, and that is: "In the case of an immediate devise, it is generally true that a devise over, in the event of the death of the preceding devisee, refers to that event occurring in the life-time of the testator, and this construction prevails where there is no other period to which the words can be referred. The application of all rules of construction must necessarily be varied by the language used by the testator, the object being to arrive at his intention, to be gathered from the entire will."

A defeasible fee is where the devisee becomes invested with the fee-simple title, subject to be divested

upon the happening of some contingency provided by
the will, as where an estate is devised to A., and if A.
should die without children then to B. ; in such a case
the devise over takes effect in the event A. dies with-
out children, and B. becomes the owner in fee of the
estate.    If A. should have children living at his death,
then B. takes no interest in the estate, nor will the
children left by A. take any interest whatever under
the will, but will inherit the estate from A.    The con-
tingency upon which A. is to be divested of title never
happening, he was invested with the fee, and the estate
passed by descent from A. to his children, and no right
was acquired by them under the will.    They inherit
from the father, because he was the absolute owner of
the estate.

Therefore, in the case before us there was no defea-
sible fee, because, by the express language of the will,
the testator has provided that "in case of the death
of either of my children (John G. Wills being one
of them), then said interest shall go to their children
in case they have any ; if not, to my four living chil-
dren or the heirs of their body," etc.    The children of
the four devisees, if any, were, by the provisions
of the will, to be vested with an interest upon the hap-
pening of a contingency, and the question presented
in the case is, what was that contingency, and when
was it to happen, by which the children, if any, were
to take, and if no children, the surviving brothers and
sisters of the immediate devisee ?    We have seen that
it was not a defeasible fee, and there being a devise
over to the children, if any, and if none, to the sur-
vivors of the first takers, the four children of the tes-

tator took either a life estate in the property devised, and at their death it passed under the will to their children, and if none, to the survivors of the immediate devisees, or they were to take in the event the immediate or first devisee died before the testator. Did the testator intend to give to his four children a life estate only? This is the real question involved. That the children of these devisees were to take under the will in a certain event is manifest, and the survivors, if there were no children, and if so, was the event upon which the survivors were to take the death at any time of the first devisees without children, or was the testator providing for the contingency of his children, or some of them, dying before the will took effect—that is, before his death? Was he providing for some one to take in the event one or more of his children died before he did?

The will of the testator was written and signed when he owned land, slaves, stock, and other personal estate, including moneys, choses in action, etc., and from its contents he must have been possessed of a considerable estate, real and personal. He made ample provision for his wife, disinherited his grandchild, the child of a deceased daughter, then gave his entire estate to his four children, naming them, *subject to the restrictions and exceptions thereinafter set forth.* He then provided that, as to his two daughters, their husbands are to have no interest in the estate devised to them, either in the principal or profits, and then makes his two sons his executors, with directions to them to execute faithfully the provisions of his will. It was, so far, a complete instrument except the signing and

attestation as required by the statute. He had made
an absolute devise of his estate, after providing for his
wife, to his four living children, with the restrictions.
and exceptions as to the interest devised to his two
daughters, by which their husbands were excluded and.
appointed his executors. The will seems to have been
written by one of more than ordinary intelligence, and.
is plain and undoubted in its meaning until we reach
the seventh and last clause of that instrument. That
seems to be an addenda to an otherwise completed will,
in which the testator attempts to provide the manner in
which his estate is to go on the happening of a certain
contingency, and that is, "in case of the death of
either of my children I will that their said interest.
shall go to their children, in case they have any ; if not,
it is to go equally to my four living children, or the
heirs of their body, or such as may be living."

It is evident that the draftsman of the instrument
must have known how to create a life estate, and
equally so, we think, that the testator had no intention.
of limiting the devise of his moneys, choses in action,
slaves and land to a life estate in his four children.
Instead of saying I give this estate to each of my chil-
dren for life, and then to their children, and if no
children, then to my surviving children, if such was
the purpose of the testator, the draftsman was evidently
attempting to provide for the contingency of one or
more of the principal devisees dying before the testa-
tor, and there being no one to take, then he says : "In
case of the death of either of my children I will that
their said interest shall go to their children, if any ; if
not, it is to be equally divided between my four living

children, or their bodily heirs." The testator wanted his four living children to have the estate and not his grandchild, and the thought suggesting itself that some of his children might die before he did, without children, he would make a provision by which he would secure the estate to the survivors. There was no devise to either of the four children, *and when they should die to their children;* for this would be but a life estate. There was no devise to John G. Wills, and if he had no children, or died without children, then to the survivor, for this would be a defeasible fee. It was simply a devise over in the event the child given the absolute estate was not living at the testator's death to take it. In that event, *"his said interest was to go to his children, if any,"* etc.

If the restrictions and exceptions mentioned in the third clause of the testator's will, by which the absolute estate is devised to the testator's four children, are to be applied to the seventh and last clause of the will, it can make no difference in the construction to be given that instrument. "In case of the death of either of my children I will that their said interest shall go to their children, in case they have any," etc.

That the death of the testator's four children was an event that must certainly happen, and the period of time at which the children of the testator's children were to take is the important inquiry.

This was not a devise over in the event the immediate devisees *died without children,* but here was a devise first to the children of the immediate devisee, and if none, to the surviving brothers and sisters. The event, then, upon which the devisee was to be deprived

of the fee was not his dying without children, because the devise was first to the children, and if none, then to the surviving devisees—showing plainly the purpose of the testator to substitute a devisee who would take in the event either one or all of his children should die before he did—that is, the child or children of the devisees are to take, and if none, to the survivor.  In case of the death of either of my children I will that their interest shall go to their children, leaving out the second devise over, and it is a devise first to the child of the testator, and in case of his death *the said interest shall go to his children*.  Now, if this creates a life estate in the immediate devisee, then the appellees are entitled to recover.  The devise over to the survivors after the direct devise to the children of the immediate devisee cannot affect the construction of this provision of the will.  It is equivalent to a devise to A., and if he is not living, to B., and if B. is dead, to C.  If A. is living at the death of the testator, neither B. nor C. can take, because A. survives the testator and is ready to take the estate.  A devise to B., and if he should die without children, to C., the event upon which C. takes is the death of B. without children, and is a defeasible fee; but such is not the provision of the will before us.  Illustrations or examples of the various rules of construction in cases of wills are to be found in the case of Edwards v. Edwards, 15 Beavan, 357, and relied on by counsel for the appellee in this case.  The first of the four classes of cases is: "That of a simple gift to A., and if he should die, then to B."  The second is: "That of a gift to A., and if he shall die without children, then to B."

3. " A gift to one for life and after his decease to A., and if A. shall die, then to B." 4. "A gift to one for life, and after his decease to A., and if A. should die without leaving a child, to B."

If the appellees are entitled to recover, this case must be brought within either the second or third class of cases. It cannot be brought under the second class, because in that class the first devisee takes the fee, if at his death he has a child or children, and his children when he dies take from him and not under the will.

Here the children of the immediate devisees are to take under the will upon the happening of a contingency, and that contingency is the death of the immediate devisee before the death of the testator. This case cannot come under the third class, because, for the reasons already given, there was no intention on the part of the testator to create a life estate.

In the case of Edwards v. Edwards, a life estate was first carved out by the testator, and then to B. absolutely, but if he should die without leaving children, then to B.'s brother. B. survived the life tenant, and it was held that he took an absolute estate. This is really an authority against the construction given the will below, although the cases are not analogous ; for if it is to be assumed that these devisees had only a life estate, it ends the controversy, and the judgment below should be affirmed.

In the case of O'Mahoney v. Burdett, 7 English and Irish Appeals, 388, the bequest was to A., and if he shall die unmarried or without children, to B., and it was held to be an absolute gift to A., de-

feasible by the gift over in the event of his dying at any time unmarried or without children. The decision in Edwards v. Edwards was questioned to some extent by all the judges in the case of O'Mahoney v. Burdett, but we see no reason for, controverting the rules laid down in that case. In O'Mahoney v. Burdett there was no devise to the children of the first devisee, but a fee to the first taker, to be defeated if he died unmarried or without children.

This case comes under the first class of cases mentioned in Edwards v. Edwards. The devise first to A.; if he should die, then to B., and if B. should be dead, to C. First to the immediate devisees of the testator, "in case they should die, then to their children in case they have any ; if not it is to go to the surviving devisees.

If the devise to the children had been omitted, and the devise had read "in case of the death of either of my children, then to the survivors," the intention of the testator as to the time would necessarily refer to his own death.

Cases may be found in the English reports controverting this rule, and at variance with the rule in this State as to the time at which an estate is to vest, or the devisee to be divested of his title; but it must be recollected that the effort of the courts in this country, when not inconsistent with the intention of the testator, is to prevent the title to real estate from remaining contingent, and unless there are plain indications of a contrary intent, to hold the title vested in those claiming under the will or gift ; and we can not, when looking to the provisions of this entire will,

hold that the prime objects of the testator's bounty were to be confined to a life estate in all the property, real, personal and mixed, devised to them.

In the case of Ware v. Watson, 7 De Gex, M. & G., 247, the testator had three sons and three daughters. He divided his estate into six shares, with the direction that each son's portion should be paid to them as soon as convenient after the testator's death, and provided: "That if any son died without having issue living at his death, the share intended for the son should descend to the survivors of the testator's children," etc. This provision was omitted from the devise to his daughters, and the court looking to the entire will, held that the shares of the sons surviving vested absolutely at the death of the testator.

This last case is much stronger, and goes farther in support of the appellant's claim, although an English case, than any we have been able to find; and still we think, when looking to the whole will, such was the testator's intention.

Neither the case of Farthing v. Allen, 2 Maddock's Ch'y, 503, or that of Child v. Giblett, 3 Mylne & Keen, 281, sustain the right of recovery in the appellees. In the last-named case, the testator devised his estate in equal portions to his two daughters, and, in the case of the death of either, to the survivor; and in the event of their marrying and having children, then to the child or children of them or the survivor, if they attain the age of twenty-one years; but if not, then among the children of Paul Giblett. The question presented in that case was, whether the two daughters, surviving the testator, took an absolute

estate at his death, or an estate for life. The general rule being, that where the devise is to the survivor in the case of the death of one of the devisees, it means the death of the testator, the court said was qualified by the devise over to the children of Paul Giblett.

Where there is an absolute devise to several, under which the devisees or donees would be entitled to the possession at the death of the testator, with a proviso that if either should die, then to the survivors, it is a universal rule that the survivorship refers to the death of the testator; but where the gift is to take effect after the termination of a particular estate, the survivorship applies to those who survive the period of distribution; that is, the termination of the particular estate. (Wren v. Hynes' Adm'r, 2 Met., 129.)

In Birney v. Richardson, 5 Dana, 424, Richardson devised his estate to his widow during widowhood, and if she married, then to his several children; but if either should die without children, then his or her part to go to the surviving children. It was held that the children living at the marriage of the widow took the absolute estate not defeasible at their death at any time without children.

In discussing that case this court said: "Had the bequests been direct and immediate to the testator's children as tenants in common, then the only question as to *dying without issue* would have been whether it meant a death in the testator's life-time, or at any time however remote. And nothing else appearing to aid in the interpretation, the law would incline to construe, 'dying *without issue*,' as meaning the death of the legatee without issue in the testator's life time.

But when the gift is not immediate but in remainder, and there is a bequest over on the legatee's death alone, or death without issue, the inquiry will be enlarged, and in such a case the simple, unexplained words, dying without issue, will be construed as meaning the death of the legatee after that of the testator, and before the time of distribution, or when the legacy may be reduced to possession."

In the present case there was no remainder interest in the four living children, but the absolute estate devised without any particular estate intervening, and a substitution of other devisees by the testator in the event his children or any of them died before he did. Can there be any doubt but that the testator intended his children to take the estate in the event they survived him? It is insisted by counsel that his purpose was to invest the four children who were the objects of his bounty with an estate for life only, with the fee in their children if they had any, and if none, to the survivors of the tenants in common. Such is not a proper construction of the will of the testator. It might be argued, if required in support of the conclusion reached, that the language used in the latter part of the seventh and last clause of the will sustains the construction heretofore given that instrument. The testator had but four children when the devise was made, all of whom were living at his death, and in making provision for those whom he desired should be the recipients of his bounty (having disinherited his grandchild), after saying " that in case of the death of either of my children I will that their said interest shall go to their children, if they have any," he then

proceeds to say "if not, it is to go *equally to my four living children, or the heirs of their body, or such as may be living.*" Living when? At the death of the testator. His four living children were to take, and he was providing for the contingency of their being, by reason of death, prevented from accepting his bounty. The seventh clause is awkwardly written; but the entire will, properly construed, gave to the four children who survived their father, the testator, the fee-simple and absolute title to the moneys, choses in action, stock and lands devised to them by his last will.

The judgment below is therefore reversed and remanded, with directions to sustain the demurrer of appellants to the two petitions, and for proceedings consistent with this opinion.